Brassard, J.
This action arose from a fatal car accident that took place on September 16, 1990 in the Town of Wakefield. The plaintiff, William J. Hancock Sr. (“Hancock, Sr.’j brought this suit against the defendants, the Town of Wakefield (“Town”) and others, after his sixteen-year-old son (“Hancock”) was killed. Hancock, Sr. makes several claims under the Massachusetts Civil Rights Act (“MCRA”), G.L.c. 12, and also makes assault and negligence claims. The defendants have moved for summary judgment.
BACKGROUND
On September 16, 1990, Officer James Scott (“Scott”) of the Wakefield Police Department observed a Camaro drive through a stop sign. Scott caught up with the vehicle while it was stopped at a light. At that point Scott made a radio transmission to the police station indicating that he was going to stop the vehicle at a nearby intersection. Scott activated his police lights and a chase ensued. Scott radioed the station again and conveyed that the vehicle was not stopping.
At that time, Sergeant Robert Thistle (“Thistle”) was the shift commander on duly. Thistle heard the transmission from Scott and then radioed that if the chase was only for a motor vehicle violation he should “let it go.” Scott maintains that he did not hear this transmission or any others made by Thistle.
Soon after the Camaro struck a limousine head on. The two occupants of the limousine and the driver of the Camaro were killed. The deceased driver was Hancock, and the vehicle he drove was uninsured and unregistered.
DISCUSSION
Summary judgment shall be granted where there are no genuine issues of material fact and where the moving party is entitled to judgment as a matter of law. Casseso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving part bears the burden of demonstrating affirmatively the absence of a triable issue, “and [further] that the moving party is entitled to judgment as a matter of law.” Pederson v. Time, Inc., 404 Mass. 14, 16-7 (1989). “If the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts which would establish the existence of a genuine issue of material fact in order to defeat [the] motion.” Pederson v. Time, Inc. supra, at 17. “[T]he opposing party cannot rest on his or her pleadings and mere assertions of disputed facts to defeat the motion for summary judgment.” LaLonde v. Eissner, 405 Mass. 207, 209 (1989).
Hancock, Sr. asserts several claims under the MCRA to the effect that Scott and Thistle used unreasonable and excessive force which caused the death of Hancock. Hancock, Sr. also claims negligence against the Town and assault against Scott. Finally, Hancock, Sr. alleges violation of the MCRA by the Police Chief William Connors (“Connors”) and the Town for negligent failure to train and supervise.
*569 The defendants have moved for summary judgment on Counts I through VII of the plaintiffs complaint. The defendants urge that this case should go to trial only as to the negligence allegations against the Town contained in Count Eight, and assert that they are entitled to qualified immunity from the plaintiffs civil rights claims.
Counts I, II, III, and IV: Violation of the Massachusetts Civil Rights Act Against Scott and Thistle for Intentional and Negligent Conduct
A violation of the MCRA requires a finding of “threats, intimidation, or coercion” on the part of the defendant in addition to a violation of civil rights. G.L.c. 12, §11. To recover in this case, the plaintiff must prove both that Scott’s conduct was threatening, intimidating or coercive and that this conduct constituted an unlawful seizure of Hancock. See id.
Prior to the Commonwealth v. Stoute decision, 422 Mass. 782 (1966), the legal analysis in this case would have been as follows: Scott never made physical contact with Hancock’s vehicle, but only traveled behind it with his lights and siren on. Because there was never any contact between the two vehicles, there was not a seizure for the purposes of the Fourth Amendment. Since Scott did not violate any of Hancock’s civil rights, the plaintiffs claim fails to meet an essential element of the MCRA claim even if the conduct at issue constitutes “threats, intimidation, or coercion.”
The SJC in Stoute recently held that a person is seized, for the purposes of article fourteen of the Massachusetts Declaration of Human Rights, when a police officer initiates a pursuit with the intent of requiring that person to submit to questioning. However, even if the complaint is read to allege an unlawful seizure in violation of Hancock’s constitutional rights, Scott is entitled to summary judgment because of the doctrine of qualified immunity.
“Government officials performing discretionaiy duties generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.” Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In regards to the Harlow standard, the Supreme Court stated: “the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right... in the light of pre-existing law the unlawfulness must be apparent.” Anderson v. Creihton, 483 U.S. 635, 640 (1988). The Supreme Judicial Court has adopted the Harlow standard as the rule applicable to state officials’ assertions of qualified immunity under the MCRA, Duarte v. Healy, 405 Mass. 43, 46-47 (1989). Even if a plaintiffs rights are violated, qualified immunity is applicable if those rights were not “clearly established.” Id. at 47-48. Therefore, it must be determined whether the acts of Scott were discretionary and, if so, whether the relevant law was clearly established at the time Scott pursued Hancock. Id.
As to the second issue, the Court concludes that Scott did not violate a clearly established statutory or constitutional right of which a reasonable officer would have known. See Duarte, 405 Mass. at 48. In Duarte, the Supreme Judicial Court made it clear that the relevant time for determining whether the right in question was clearly established is the time of the alleged deprivation of the constitutional or statutory right in question. Duarte, 405 Mass. at 47. In September of 1990 the case law was clear that unless there was “an acquisition of physical control” over an individual, there was no seizure.[3] Brower v. County of Inyo, 489 U.S. 593, 57 (1989).
A public official is not entitled to Duarte immunity except for his “discretionaiy acts,” even if the right in question was not clearly established at the time of the alleged deprivation. Breault v. Chairman of the Board of Fire Commissioners of Springfield, 401 Mass. 26 (1987) (public official liable for intentional ministerial act in violation of statute). The plaintiff urges that the question of whether the police chase in this case was a discretionary function has been decided by the Supreme Judicial Court in Horta v. Sullivan, 418 Mass. 615 (1994). In Horta, the Court held that a police chase was not a “discretionaiy function” as that term is used in § 10(b) of Chapter 258, the Massachusetts Tort Claims Act. The Court interpreted “discretionary function” narrowly to prevent the exception to liability, established by § 10(b), from swallowing the general rule of governmental liability established by the Tort Claims Act. The Court held that the police officer’s conduct in that case was an ad hoc decision based on the situation then confronting the police officer, and was not a decision based upon considerations of governmental policy or planning. Likewise, Scott’s conduct in this case may well not be discretionary for purposes of the claim advanced by Hancock Sr. against the Town under the Massachusetts Tort Claims Act. However, this Court finds that the analysis is different when the question is not an exception to governmental liability under the Tort Claims Act but rather an issue of immunity for an individual government employee. The concept of a “discretionaiy function” should be interpreted more broadly when the issue is one of qualified immunity for a public official as opposed to the question of an exception to governmental liability under the Tort Claims Act. The decision made by Scott in this case to pursue Hancock required the exercise of judgment, and was not simply a ministerial decision of the type involved in the Breault case. Indeed, the guidelines for high speed pursuits promulgated by the Wakefield Police Department do not specify the precise action that a police officer must take in eveiy instance, and thus confer upon the police officer discretionaiy authority. Duarte, 405 Mass. at 48. Accordingly, this Court concludes *570 that the claims of Hancock Sr. against Scott are barred by the doctrine of qualified immunity.
Hancock Sr. also makes claims against Thistle under the Massachusetts Civil Rights Acts. Entirely apart from the issues of whether Thistle as the dispatcher was engaged in a discretionary function, and whether the law was clearly established, it is clear that Thistle engaged in no conduct which could fairly be characterized as “threats, intimidation, or coercion.” For that reason, summary judgment will enter in favor of Thistle with respect to the claims made against him under the Massachusetts Civil Rights Act.
To the extent that the complaint alleges negligent violations of the Massachusetts Civil Rights Act, the Court notes that the Supreme Judicial Court has made it clear that the Massachusetts Civil Rights Act “operates almost entirely within the realm of behavior which is ‘intentional’ in the tort sense ‘that the actor desires to cause consequences of his act, or that he believes that the consequences are substantially certain to result from it.’ ” Breault, 401 Mass. at 36 (citation omitted).
Counts V. and VI: Violation of the Massachusetts Civil Rights Act Against Connors and the Town for Intentional and Negligent Failure to Train and Supervise
The defendants are entitled to summary judgment as to these counts for two reasons. First, there is no basis to conclude that the acts or omissions of either Connors or the Town constituted “threats, intimidation or coercion.” Further, although the plaintiff has put forth some evidence of a prior allegation against Scott as to excessive force, the plaintiff has failed to demonstrate that the Town had a policy or custom of violating the civil rights of citizens. Monell v. Department of Social Services of the City of New York, 98 S.Ct. 2018, 2036 (1978). This Court concludes that the Supreme Judicial Court would apply Monell to the Massachusetts Civil Rights Act, and would conclude that a municipality cannot be held liable under the Massachusetts Civil Rights Act solely on the basis of a respondent superior theory. See Rodrigues v. Furtado, 410 Mass. 878, 889 (1991). Further, there is no basis in this record to conclude that the Town or its police department was deliberately indifferent to the training of police officers or to the supervision of those officers.
Count VII: Assault Against Scott
Count VII of the complaint alleges that Scott committed an assault against Hancock. This Court finds, on the facts presented, that there is no actionable assault as matter of law. There was neither an attempted battery by Scott nor an immediately threatened battery by him. Rather, Hancock was resisting what appeared to be a lawful stop by a police officer.
ORDER
It is therefore ordered that the defendants’ Motion for Summary Judgment on Counts I, II, III, IV, V, VI and VII be ALLOWED.

The Brower court reasoned that a seizure takes place: “only when there is a governmental termination of freedom of movement through means intentionally applied . . . The pursuing police car sought to stop the suspect only by the show of authority represented by flashing lights and continuing pursuit; and though he was in fact stopped he was stopped by a different means — his loss of control of his vehicle and the subsequent crash.”